**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CATHY TARR; and MICHAEL TARR, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> NARCONON FRESH START d/b/a ) <br> RAINBOW CANYON RETREAT, ) <br> ) <br> Defendant. ) | Case No.: 2:14-cv-0283-GMN-NJK <br><br> **ORDER** |

Presently before the Court is the Motion to Dismiss, (ECF No. 20), filed by Defendant Narconon Fresh Start ("Narconon"). Plaintiffs Cathy Tarr and Michael Tarr filed a Response in opposition, (ECF No. 27), and Narconon filed a Reply, (ECF No. 28). For the reasons set forth below, the Court will deny the motion.

## I.   BACKGROUND

This case centers upon allegations that a drug rehabilitation program operated by Narconon was actually a surreptitious scheme to indoctrinate unsuspecting individuals into the Church of Scientology. (First Am. Compl., ECF No. 15). Plaintiff Cathy Tarr ("Ms. Tarr") discovered Narconon's web site in April 2013 while searching for a drug rehabilitation program to assist her twenty-four year old son, Plaintiff Michael Tarr ("Michael"). *Id.* at 3:12-15. Upon contacting Narconon, Ms. Tarr claims that a Narconon employee told her that the program was a "scientifically and medically proven" detoxification regimen with a well-trained staff that would provide drug counseling and administer a sauna- and vitamin-based routine to rid Michael of his heroin addiction. *Id.* at 3:16-4:6. Ms. Tarr alleges that she soon received a pamphlet which stated that the program was secular and had a 76% success rate. *Id.* at 4:4-6.

Ms. Tarr then paid the $33,000 enrollment fee and admitted Michael into the program. *Id.* at 4:15-16; *see also* (Ex B. to First Am. Compl. at 32-33). Plaintiffs claim that the program

required that Michael regularly engage in a Scientology ritual known as the "Purification Rundown," which involved ingesting large doses of niacin and spending six hours in a sauna that was kept at temperatures in excess of 160 degrees Fahrenheit. *Id.* at 5:21-6:2.  Plaintiffs also allege that, despite Narconon's promises to provide secular substance abuse counseling, Michael was counseled only about Scientology. *Id.* at 8:22-25.  Additionally, Plaintiffs claim that Michael was required to read eight books about Scientology as part of the program. *Id.* at 5:15-16.  Within two weeks of completing the program and returning home, Plaintiffs allege that Michael suffered a relapse and nearly died from a drug overdose. *Id.* at 9:5-11.  Because of his ongoing addiction, Ms. Tarr subsequently enrolled Michael in a different substance abuse treatment program. *Id.* at 9:11-14.

Based on these allegations, the First Amended Complaint sets forth claims for (1) breach of contract, (2) fraud, (3) negligence, (4) intentional infliction of emotional distress, (5) negligent misrepresentation, (6) negligence per se, (7) breach of the implied covenant of good faith and fair dealing, and (8) civil conspiracy. *Id.* at 10:7-14:12.

In the instant Motion, Narconon argues that the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

1    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id*. Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *E.g.*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

In its Motion, Narconon argues that the First Amended Complaint fails to adequately state claims for (A) breach of contract; (B) breach of the covenant of good faith and fair dealing; and (C) intentional infliction of emotional distress. The Court will address each of these arguments in turn.

#### A. Breach of Contract

Narconon argues that Plaintiffs failed to adequately state a claim for breach of contract, asserting the First Amended Complaint does not specifically mention that a contract existed or identify the terms of the alleged contract. A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

In this case, Plaintiffs have sufficiently alleged the existence of a valid and enforceable contract. Ms. Tarr has alleged that Narconon offered to provide secular drug rehabilitation services and counseling for Michael in exchange for her payment of $30,000. Furthermore, Plaintiffs claim that Narconon breached this agreement by failing to provide substance abuse counseling and requiring that Michael complete readings and undergo rituals based on Scientology. As a result, Plaintiffs claim that Ms. Tarr and Michael suffered damages, as Michael subsequently overdosed on drugs and had to be enrolled in a different rehabilitation program to receive treatment similar to what Narconon had promised. Therefore the First Amended Complaint satisfies all of the necessary elements of a breach of contract claim under Nevada law.

Narconon also argues that Michael was not a party to the agreement and therefore cannot

assert a breach of contract claim.  Under Nevada law, a third party has standing to sue for breach of contract (1) if the agreement was formed with the intent to benefit a third party and (2) if the third party's reliance on the agreement was foreseeable. *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824-25 (1977).  Here, Plaintiffs have sufficiently alleged that Ms. Tarr paid Narconon the enrollment fee for the sole purpose of providing Michael with drug rehabilitation services.  Furthermore, taking Plaintiffs' allegations as true, Michael's reliance on the agreement was foreseeable because he traveled to Narconon's facility and participated in the program.  Accordingly, the Court finds that Michael has standing to assert a breach of contract claim as a third-party beneficiary.  Therefore, the Court will deny the Motion to Dismiss as it relates to Plaintiffs' claim for breach of contract.

### B.  Breach of the Covenant of Good Faith and Fair Dealing

Narconon argues that because Plaintiffs did not adequately plead their claim for breach of contract, their claim for breach of the covenant of good faith and fair dealing must also fail.  However, as the Court finds that Plaintiffs have sufficiently alleged that Narconon breached a valid and enforceable contract, this argument is invalid.  Therefore, the Court will deny the Motion to Dismiss as it relates to Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

### C.  Intentional Infliction of Emotional Distress

Narconon argues that Plaintiffs have failed to adequately state a claim for intentional infliction of emotional distress, as the conduct alleged by Plaintiffs is not sufficiently extreme or outrageous and there is no allegation that Plaintiffs suffered physical harm as a result of Narconon's actions.  To state a claim for intentional infliction of emotional distress under Nevada law, a plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Welder v.*

1  *Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (quoting *Dillard Dep't Stores,*
2  *Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999)).
3        "[E]xtreme and outrageous conduct is that which is outside all possible bounds of
4  decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency*
5  *Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations omitted).  "Extreme and
6  outrageous conduct also may arise from an abuse by the actor of a position, or a relation with
7  the other, which gives him actual or apparent authority over the other, or power to affect his
8  interests." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009) (internal
9  quotations omitted).  When considering whether a plaintiff has sufficiently stated a claim upon
10 which relief can be granted, "The court determines whether the defendant's conduct may be
11 regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may
12 differ, the jury [must determine] whether the conduct was extreme and outrageous enough to
13 result in liability." *Id.* at 1121.
14       In the instant case, Plaintiffs allege that Narconon deliberately sought out individuals
15 who were suffering from drug addictions and deceived their families into enrolling them in a
16 false "drug rehabilitation program" which, in actuality, existed for the sole purpose of
17 converting these individuals to Scientology when they were most vulnerable.  While it remains
18 a question of fact to be resolved by the jury, the Court finds that a reasonable person could
19 certainly conclude that it was "outside all possible bounds of decency" for Narconon to attempt
20 to indoctrinate Michael Tarr into the Church of Scientology in lieu of helping him overcome his
21 heroin addiction.  Therefore, the Court finds that Plaintiffs have sufficiently alleged that
22 Narconon's conduct was extreme and outrageous.
23       Narconon also argues that this claim should be dismissed because Plaintiffs do not assert
24 that Michael suffered any physical injury as a result of the alleged conduct.  In support of this
25 argument, Narconon refers to *Olivero v. Lowe*, which held that physical injury or illness must

be shown in a claim for *negligent* infliction of emotional distress. 995 P.2d 1023, 1026 (Nev. 2000).  However, *intentional* infliction of emotional distress is a separate and distinct tort that does not require a showing of physical injury if a plaintiff can show that he has suffered severe emotional distress. *See, e.g.*, *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 148 (Nev. 2014) ("If the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required"); *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983) ("The less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress.").  Accordingly, the Court finds that the absence of a particularized allegation of physical harm does not render this claim invalid, and therefore the Motion to Dismiss will be denied as to this claim.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss the First Amended Complaint (ECF No. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss the Original Complaint (ECF No. 6) is **DENIED as moot**.

**DATED** this 8th day of December, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court